66 F.3d 339
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Malcolm E. BOYD, Defendant-Appellant.
 No. 94-3433.
(D.C.No. 94-CR-40027).
 United States Court of Appeals, Tenth Circuit.
 Sept. 13, 1995.
 
 Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 McKAY.
 
 
 2
 The parties have agreed that this case may be submitted for decision on the briefs. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1.2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Mr. Boyd appeals the denial of his motion to suppress evidence found in his car when he was arrested on September 2, 1993. We review the district court's factual findings made in connection with a motion to suppress under a clearly erroneous standard. United States v. Little, 18 F.3d 1499, 1503 (10th Cir.1994) (en banc). We review de novo the district court's legal conclusions as to whether police action was reasonable within the meaning of the Fourth Amendment. United States v. Sandoval, 29 F.3d 537, 539 (10th Cir.1994).
 
 
 4
 The pertinent facts as found by the district court are as follows. Michael Homan, a security guard at Topeka High School, was patrolling the school grounds on the morning of September 2, 1993. A former student at the high school had been shot and killed the previous day. The murder victim had friends and relatives attending Topeka High School. Mr. Homan was told by an associate principal to beware of possible retaliation for the prior day's murder. At around 10:35 a.m., Mr. Homan observed three vehicles which appeared to be circling the school, including a white Cadillac. Mr. Homan recognized another one of the cars, an Oldsmobile, as containing the deceased's brother. The Cadillac made three circuits about the school. Mr. Homan saw what he interpreted to be gang hand signs being flashed to students from the cars. At one point a student at the school, who is a relative of Mr. Boyd, approached the Cadillac, and a brief conversation took place. The Cadillac then departed. Mr. Homan was told by a student that the driver of the Cadillac had a gun. Mr. Homan called in the Cadillac's tag number to Topeka Police Officer Richard Johnson and learned that the car was registered to Mr. Boyd. Mr. Homan told Officer Johnson that he was concerned about a possible retaliatory incident.
 
 
 5
 Officer Johnson spoke to Warrant Officer Mike Grey. Officer Grey said that there were outstanding warrants for Mr. Boyd and that he had been looking for him. Later that afternoon, Officer Johnson relayed this information to a third police officer, Officer Shead.
 
 
 6
 Officer Shead observed the Cadillac driving past the high school at about 3:00 p.m. Officer Shead stopped the Cadillac and saw an open container of alcohol in the passenger compartment. Shortly thereafter, he discovered a gun under the front seat. Officer Johnson then arrived to assist Officer Shead. Officer Shead ran a name check on Mr. Boyd. He testified at the suppression hearing that "it came back a hit," meaning that the check had located an outstanding warrant for Mr. Boyd's arrest. In addition, Officer Shead's notes of the arrest indicate that he learned the defendant had two city warrants and one county warrant outstanding. Mr. Boyd was then arrested and indicted for being a felon in possession of a firearm. The district court denied his motion to suppress the evidence found in the car (the gun).
 
 
 7
 Mr. Boyd pled guilty, reserving his right to appeal the adverse determination of his suppression motion by the district court. Mr. Boyd does not allege any improper actions on the part of the police after he was pulled over, but rather questions whether the initial stop of his vehicle was proper.
 
 
 8
 The district court offered two alternative grounds under which the stop of Mr. Boyd's car was constitutional. First, the district court held that there were "reasonable grounds for an investigatory stop." While this ground is problematic, we need not reach it because we conclude that the alternate ground is clearly sufficient to sustain the denial of the suppression motion.
 
 
 9
 The district court's alternative ground for denying the motion to suppress was that the stop was proper because the police had probable cause to believe that one or more arrest warrant(s) existed for Mr. Boyd. Under Kansas Law, a law enforcement officer is authorized to arrest a person if she or he has probable cause to believe a warrant for that person's arrest had been previously issued in the state. K.S.A. 22-2401(b). State v. Flummerfelt, 684 P.2d 363, 365 (Kan.1984). The defendant does not challenge the validity of this statute, but he does question whether there was probable cause to believe that an outstanding warrant existed. In support of this argument, Mr. Boyd points to the government's inability to produce a warrant or copy of the warrant at the suppression hearing. Furthermore, Mr. Boyd adduced testimony at the hearing from his wife that he had recently cleared all warrants against him by paying some outstanding fines. Nevertheless, the district court held that "the weight of credible evidence firmly supports the conclusion that warrants were pending on defendant at the time of the investigatory stop."
 
 
 10
 We cannot say that this factual finding is clearly erroneous. Nevertheless, we believe the district court has mischaracterized the relevant inquiry. While it is true that the officer's notes and testimony are probative of the existence of outstanding warrants at the time the stop was made, the district court appears to have failed to consider the fact that this information was based on a name check that was conducted after the stop had been made. Thus, the notes and testimony are irrelevant to the critical inquiry of whether Officer Shead had probable cause to believe a warrant existed prior to the stop.
 
 
 11
 Prior to the stop, the basis for Officer Shead's belief that there were warrants outstanding for Mr. Boyd was the fact that he had been so told by Officer Johnson, who, in turn, had been informed of the warrants by Warrant Officer Grey. Officer Grey's primary job was to serve warrants for the City of Topeka. A police officer must be allowed to rely on a warrant officer for information regarding the existence of a warrant on a specific individual. Thus, Officer Shead did have probable cause to believe that a warrant existed within the meaning of K.S.A. 22-2401(b). Therefore, he was authorized to stop and arrest Mr. Boyd.
 
 
 12
 Mr. Boyd argues that the government's inability to produce a copy of the warrant(s) at the suppression hearing raises other problems. Specifically, he points out that the evidence from a proper arrest can still be suppressed if it can be proven that the warrant was constitutionally deficient. Without a copy of the warrant(s), Mr. Boyd has no way of knowing what defects the warrant(s) might contain or of challenging their validity. This argument, though not without merit, fails to take into account the fact that once Mr. Boyd's car was pulled over, the police immediately observed an open container of alcohol in the car. This observation of illegal conduct provided an independent justification for Mr. Boyd's arrest, including a search of the passenger compartment of the vehicle where the firearm was found.
 
 
 13
 For the foregoing reasons the judgment of the district court denying the motion to suppress is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470